**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division**

ANDREW NATHAN WORLEY, PAT WAYMAN, JOHN
SCOLARO, and ROBIN STUBLEN,

      Plaintiffs,

v.

                                     Civil Action No.

DAWN K. ROBERTS, in her official capacity as
Florida Secretary of State; JORGE L. CRUZ-
BUSTILLO, in his official capacity as Chair of the
Florida Elections Commission; WILLIAM H.
HOLLIMON, in his official capacity as Vice Chair
of the Florida Elections Commission; and ALIA S.
FARAJ-JOHNSON, E. LEON JACOBS, JR., JULIE B.
KANE, GREGORY KING, JOSE LUIS RODRIGUEZ,
THOMAS E. ROSSIN, and BRIAN M. SEYMOUR in
their official capacities as members of the Florida
Elections Commission,

      Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1.      This case is a First Amendment challenge to campaign-finance laws that severely burden the rights of ordinary people to band together to speak effectively about proposed constitutional amendments in the State of Florida. The Plaintiffs are four Florida residents who wish to associate with one another and with others to speak out against the passage of proposed Amendment 4 in the upcoming election on November 2, 2010.

2.      The U.S. Supreme Court has repeatedly made clear that speech like Plaintiffs' is at the core of what the First Amendment was intended to protect. But under Florida law, Plaintiffs can be fined or even jailed if they pool their money to pay for political advertisements without first registering with the state and complying with a host of burdensome regulations. Florida law even goes so far as to totally ban spending any contributions received in the last five days before the election.

3.      This action challenges the provisions of Florida's campaign-finance laws that require groups to form "political committees" and comply with onerous administrative, organizational, and reporting requirements in order to speak out about political issues. It challenges the various restrictions that make speaking and associating more difficult. And it challenges compelled speech in the form of disclaimers on all paid communications that advocate the passage or defeat of a ballot issue. Under the First Amendment and recent Supreme Court precedent, these unconstitutional restrictions on political speech cannot stand.

**JURISDICTION**

4.      Plaintiffs bring this civil-rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgments Act, 28 U.S.C. § 2201. Plaintiffs seek injunctive and declaratory relief against the enforcement of the State's campaign-finance laws, Fla. Stat. §§ 106.011, *et seq.*; their implementing rules and regulations; and the practices and policies of the Florida Secretary of State and the Florida Elections Commission, which facially and as applied burden Plaintiffs' protected political speech

and prevent them from engaging in public discourse about statewide and local political matters.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Andrew Nathan Worley wishes to associate with his fellow plaintiffs and with others in order to speak out more effectively in opposition to proposed Amendment 4 to the Florida Constitution and in support of or opposition to other ballot issues in the future. He is a resident of North Port, Florida.

8. Plaintiff Pat Wayman wishes to associate with her fellow plaintiffs and with others in order to speak out more effectively in opposition to proposed Amendment 4 to the Florida Constitution and in support of or opposition to other ballot issues in the future. She is a resident of Venice, Florida.

9. Plaintiff John Scolaro wishes to associate with his fellow plaintiffs and with others in order to speak out more effectively in opposition to proposed Amendment 4 to the Florida Constitution and in support of or opposition to other ballot issues in the future. He is a resident of Venice, Florida

10. Plaintiff Robin Stublen wishes to associate with his fellow plaintiffs and with others in order to speak out more effectively in opposition to proposed Amendment

4 to the Florida Constitution and in support of or opposition to other ballot issues in the future. He is a resident of Punta Gorda, Florida.

11.     Defendant Dawn K. Roberts is the Florida Secretary of State. Pursuant to sections 106.22 and 106.23 of the Florida Statutes, the Secretary—through the Division of Elections of the Department of State—is responsible for prescribing rules and regulations to carry out the provisions of Florida's campaign-finance laws, which include the laws regarding political committees. At all times relevant to this complaint, the Secretary was acting under color of state law. Plaintiffs sue the Secretary in her official capacity and seek only prospective declaratory and injunctive relief against her.

12.     Defendants Jorge L. Cruz-Bustillo, Alia S. Faraj-Johnson, William H. Hollimon, E. Leon Jacobs, Jr., Julie B. Kane, Gregory King, Jose Luis Rodriguez, Thomas E. Rossin, and Brian M. Seymour are members of the Florida Elections Commission. Pursuant to sections 106.24 and 106.25 of the Florida Statutes, the Commission is responsible for enforcing Florida's campaign-finance laws, including the laws regarding political committees. At all times relevant to this complaint, the Commissioners were acting under color of state law. Plaintiffs sue the Commissioners in their official capacities and seek only prospective declaratory and injunctive relief against them.

## STATEMENT OF FACTS

13.     Plaintiffs are four individuals who wish to associate with one another and with others for the major purpose of running independent political advertisements—what the campaign-finance laws refer to as "independent expenditures"—that expressly

advocate the defeat of proposed Amendment 4 to the Florida Constitution in the upcoming elections on November 2, 2010. Specifically, they wish to run ads targeted to Florida voters, urging them to vote against the passage of Amendment 4.

14.     Amendment 4, if passed, would "[e]stablish[] that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, the proposed plan or amendment shall be subject to vote of the electors of the local government by referendum." Fla. Div. of Elections, *Initiative Information*, http://election.dos.state.fl.us/initiatives/initdetail.asp?account=37681&seqnum=2 (last visited September 27, 2010).

15.     Plaintiffs are not affiliated with the sponsors of Amendment 4, and played no role in placing Amendment 4 on the ballot. Plaintiffs also played no role in any of the legal challenges to Amendment 4's placement on the ballot.

16.     Plaintiffs have drafted a proposed radio advertisement and received price quotes for the cost of broadcasting their ad on a local talk-radio station. The cost of running the ad 25 times will be $600.

17.     Plaintiffs are ready, willing, and able to pay for their proposed advertisement by pooling their money. If Plaintiffs were able to freely accept contributions from other individuals who also wanted to defeat Amendment 4, Plaintiffs would increase the size of their advertising purchase to ensure that more voters heard their message.

18.     Plaintiffs are all politically active. In addition to running their proposed advertisement during this election cycle, they want to be able to freely associate with one

another and with others in the future to run similar advertisements expressly advocating the passage or defeat of future state constitutional amendments.

19.     In order to run their proposed advertisements or similar advertisements in the future, however, Plaintiffs will have to become a regulated political committee and undertake all the legal obligations imposed on those organizations.

20.     If Plaintiffs broadcast their proposed advertisement, they will also be required to dedicate a portion of their advertisement to a state-mandated disclaimer. Plaintiffs want to use the entire 30 seconds of the advertisement for promoting their own message. If they are required to include the disclaimer, they will have to cut out a portion of their message.

21.     Finally, under Florida law, Plaintiffs will also be subject to limits on their ability to spend money for their advertisements close to the election.

22.     Plaintiffs object to these limits on their speech. Plaintiffs have busy lives and only a limited amount of time and resources to devote to this effort; they do not want to be saddled with burdensome regulations merely for exercising their First Amendment rights to speak and associate. Further, all of the Plaintiffs fear punishment for speaking if they fail to comply with the campaign-finance laws. Accordingly, as long as these laws remain in effect, Plaintiffs will remain silent.

### Florida's Campaign-Finance Laws

#### Definitions

23.     Florida law defines a "political committee" in relevant part as "[a] combination of two or more individuals . . . that, in an aggregate amount in excess of

$500 during a single calendar year . . . [either] [a]ccepts contributions for the purpose of expressly advocating . . . the passage or defeat of an issue [or] [m]akes expenditures that expressly advocate . . . the passage or defeat of an issue." Fla. Stat. § 106.011(1)(a)1.b.-1.c. "Political committee" does not include corporations "formed for purposes other than to support or oppose issues . . . if their political activities are limited to . . . expenditures in support of or opposition to an issue from corporate or business funds and if no contributions are received by such corporations or business entities." Fla. Stat. § 106.011(1)(b)2.

24.     "'Issue' means any proposition which is required by the State Constitution, by law or resolution of the Legislature, or by the charter, ordinance, or resolution of any political subdivision of this state to be submitted to the electors for their approval or rejection at an election, or any proposition for which a petition is circulated in order to have such proposition placed on the ballot at any election." Fla. Stat. § 106.011(7).

25.     "Contribution" means, in part, "[a] gift, subscription, conveyance, deposit, loan, payment, or distribution of money or anything of value, including contributions in kind having an attributable monetary value in any form, made for the purpose of influencing the results of an election or making an electioneering communication." Fla. Stat. § 106.011(3)(a).

26.     "Expenditure" is defined, in part, as "a purchase, payment, distribution, loan, advance, transfer of funds . . ., or gift of money or anything of value made for the

purpose of influencing the results of an election or making an electioneering communication." Fla. Stat. § 106.011(4)(a).

27.      "'Independent expenditure' means an expenditure by a person for the purpose of expressly advocating . . . the approval or rejection of an issue, which expenditure is not controlled by, coordinated with, or made upon consultation with, any candidate, political committee, or agent of such candidate or committee." Fla. Stat. § 106.011(5)(a).

## Political-Committee Regulations

28.      Political committees in Florida are subject to numerous burdensome regulations. As described in more detail below, before a political committee may speak, it must first register with the government and establish a separate bank account. Once it has registered, it is then subject to extensive administrative, organizational, and reporting requirements.

29.      Under Florida law, "[e]ach political committee that anticipates receiving contributions or making expenditures during a calendar year in an aggregate amount exceeding $500 . . . shall file a statement of organization . . . within 10 days after its organization or, if later, within 10 days after the date on which it has information that causes the committee to anticipate that it will receive contributions or make expenditures in excess of $500." Fla. Stat. § 106.03(1)(a).

30.      The statement of organization must include, among other things, the name and address of the committee; the names, address, and relationships of all affiliated or connected organizations; the area, scope, or jurisdiction of the committee; the identity

and address of the custodian of the books and accounts; the identity and address of all principal officers; a listing of all depositories; and a statement of all reports required to be filed with federal officials. Fla. Stat. § 106.03(2).

31. The statement of organization also must list the candidates or issues supported or opposed. Fla. Stat. § 106.03(2)(f), (g).

32. The campaign treasurer must keep "detailed accounts, current within not more than 2 days after the date of receiving a contribution or making an expenditure." Fla. Stat. § 106.06(1). Contributions must be deposited within five business days. Fla. Stat. § 106.05.

33. With limited exceptions, all expenditures by political committees must be made by check drawn against the committee's designated depository. Fla. Stat. § 106.11(1)(a). This account must be "separate from any personal or other account" and may be used "only for the purpose of depositing contributions and making expenditures for the candidate or political committee." *Id.*

34. Once registered as a political committee, a group must file regular reports of all contributions received and expenditures made. Reports shall be filed on the 10th day following the end of each calendar quarter. Reports shall also be filed on the 32nd, 18th, and 4th days immediately preceding the primary election and on the 46th, 32nd, 18th, and 4th days immediately preceding the general election. If there are no candidates and only issues on the ballot, reports shall be filed on the 18th and 4th days prior to the election. Fla. Stat. § 106.07(1).

35.     The required reports must include the full name and address of each person who has made a contribution to the committee, regardless of how small. Fla. Stat. § 106.07(4)(a)1. For contributions of more than $100, the report must also include the contributor's occupation or principal type of business. *Id.*

36.     Political committees that file late reports are subject to a fine of $50 per day for the first three days late; thereafter $500 per day, not to exceed 25% of either total receipts or expenditures, whichever is greater, for the period covered by the late report. For late reports immediately preceding the primary or general election, the committee is subject to a fine of $500 per day for each day late, not to exceed 25% of either total receipts or expenditures, whichever is greater, for the period covered by the late report. Fla. Stat. § 106.07(8)(b).

37.     The treasurer of a political committee must maintain all of the committee's financial records for at least two years following the passage of the election to which those financial records pertain. Fla. Stat. § 106.06(3).

38.     If a political committee fails to report a contribution or makes a prohibited expenditure, it is subject to a civil penalty equal to three times the amount involved in the illegal act. Fla. Stat. § 106.19(1)(b), (2).

39.     Upon information and belief, all reports filed with the Secretary are considered public records and information from filed reports is made available on the Secretary's website. *See* Fla. Stat. § 106.0706.

**Funding and Expenditure Restrictions**

40.     Political committees may not accept cash contributions over $50. Fla. Stat. § 106.09(1). Any person who makes or accepts a cash contribution in excess of $50 commits a first-degree misdemeanor. Fla. Stat. § 106.09(2)(a). Knowingly and willfully making or accepting a cash contribution in excess of $5,000 is a third-degree felony. Fla. Stat. § 106.09(2)(b).

41.     Political committees are also subject to an outright prohibition on spending contributions received in the last five days preceding the election. Penalties for knowingly and willfully violating this provision are equal to twice the amount contributed in violation. Fla. Stat. § 106.08(4), (8).

**Disclaimer Requirements**

42.     Any "political advertisement" paid for by an independent expenditure— whether by an individual or a group—must prominently state: "Paid political advertisement paid for by (Name and address of person paying for communication) independently of any (candidate or committee)." Fla. Stat. § 106.071(2). The Florida Elections Commission is authorized to impose a fine of up to $1,000 for any violation of this section. Fla. Stat. § 106.265(1); *see also* Fla. Admin. Code 2B-1.003(2)(d) (limiting fine to $250 for minor violations of the disclaimer requirement). Failure to include this statement is also a first-degree misdemeanor. Fla. Stat. § 106.071(4).

43.     "Political advertisement" means "a paid expression in any communications media" including, specifically, "radio, television, newspaper, magazine, periodical, campaign literature, direct mail, or display or by means other than the spoken

word in direct conversation, which expressly advocates the election or defeat of a candidate or the approval or rejection of an issue." Fla. Stat. § 106.011(17).

## Enforcement Provisions

44. The Division of Elections is required to conduct random audits with respect to the reports and statements filed under this chapter and to report to the Florida Elections Commission any failures to file a report or the information required. Fla. Stat. § 106.22(10), (7).

45. Florida law allows any person to file a sworn complaint with the Florida Elections Commission based upon personal information or information other than hearsay regarding a potential violation of the campaign-finance laws. Fla. Stat. § 106.25(2). Actions for violations of this chapter must be commenced before two years have elapsed from the date of the violation. Fla. Stat. § 106.28.

46. The Florida Elections Commission shall "consider all sworn complaints filed with it and all matters reported to it by the Division of Elections." Fla. Stat. § 106.26(1). The Commission has the authority to issue subpoenas and conduct a hearing. Fla. Stat. § 106.26(1). At the conclusion of the hearing, "the commission shall immediately begin deliberations on the evidence presented at such hearings and shall proceed to determine by affirmative vote of a majority of the members present whether a violation of this chapter or chapter 104 [the Election Code] occurred." Fla. Stat. § 106.26(11).

12

47. Upon the finding of a violation, the Commission is authorized to impose a civil penalty not to exceed $1,000 per count, unless a different penalty is specified. Fla. Stat. § 106.265(1).

48. Criminal actions may also be brought in the appropriate court of competent jurisdiction for many violations. Fla. Stat. § 106.27(1).

### Injury to Plaintiffs

49. Plaintiffs have a First Amendment right to expressly advocate the defeat of proposed Amendment 4 to the Florida Constitution in the upcoming November election.

50. To engage in such discussion as fully and effectively as possible, Plaintiffs must be permitted to exercise their First Amendment rights to speak out and to associate with others.

51. Florida's campaign-finance laws contained in Fla. Stat. §§ 106.011 *et seq*., as well as the actions of the Secretary in implementing and interpreting those provisions and the Commission in enforcing those provisions, substantially burden and chill Plaintiffs' and others' rights to free speech and association under the First and Fourteenth Amendments to the United States Constitution.

52. Florida requires informal groups like Plaintiffs' that expressly advocate the passage or defeat of ballot issues to register as political committees and to comply with administrative, organizational, and reporting requirements of the type the Supreme Court recently found "burdensome" and "expensive to administer." *See Citizens United*, 130 S. Ct. 876, 897 (2010). Thus, Florida's campaign-finance laws impose onerous and

time-consuming regulations as a condition of speaking and associating about ballot issues.

53.    In order to speak and associate about Amendment 4, Plaintiffs must first register as a political committee and comply with the registration, reporting, and disclosure requirements that apply to political committees.

54.    Under Supreme Court precedent, Plaintiffs have an absolute right to make independent political expenditures. But, as a political committee, Plaintiffs will have to establish a separate bank account and order checks for that account before they are permitted to speak. Plaintiffs are prohibited from handling payments on behalf of the group—or repayments to group members—on an informal basis using their personal checking accounts.

55.    As a political committee, Plaintiffs are also prohibited from accepting cash contributions over $50. This means that if one of their fellow political activists heard about Plaintiffs' effort and wanted to make an immediate cash contribution of $100, Plaintiffs would be forbidden from accepting that money, even though they would accept that money if it were legal to do so.

56.    Because political committees are absolutely barred from spending any money raised during the last five days before the election until after the election has passed, Plaintiffs are prohibited from spending money during the most crucial time in the election: immediately before the vote.

57.    Due to Florida's disclaimer requirement, Plaintiffs must devote at least six seconds of their advertisement (20% of their advertising time) to speech that is not their

own. This deprives Plaintiffs of precious time to communicate their message. Plaintiffs want to devote the entire 30 seconds of their advertisement to urging voters to oppose Amendment 4.

58.    Further, by requiring Plaintiffs to identify themselves in the text of their advertisement, Florida's disclaimer requirement forces Plaintiffs to choose between their privacy and their rights to free speech and association.

59.    As a political committee, Plaintiffs will also have to make detailed and burdensome disclosures of their expenditures. For example, if Plaintiffs go forward with their radio ads and then later decide to wave handmade signs on election day urging the defeat of Amendment 4, they will be forced to record and report the cost of posterboard, markers, and fuel for driving to pick up these supplies.

60.    As a political committee, Plaintiffs will also be compelled to collect and disclose information about their contributors, including the full name, address, and amount of each contribution, plus the occupation or principal type of business for those who contribute over $100. This requirement makes it impossible for Plaintiffs accept contributions informally or to "pass the hat" for donations to fund more radio ads, which Plaintiffs would do if it were legal.

61.    By requiring political committees to report to the Secretary of State the identities and addresses of anyone who contributes any amount of money to the political committee, and occupation (or principal business) of anyone who contributes $100 or more, the disclosure requirements for political committees require Plaintiffs—and those who may wish to contribute to their efforts—to choose between their privacy and their

rights to free speech and association. Plaintiffs are also concerned that some people who may want to contribute to their effort would not do so if it meant their name and address would be disclosed on the Internet.

62.     The registration, reporting, and disclosure requirements are complicated and take time and effort to comply with. Plaintiffs and many others who wish to speak or associate about ballot issues are not experienced campaign organizers or politicians. For such individuals, complying with the registration, reporting, and disclosure provisions for political committees is difficult and time consuming, and the threat of having a complaint—or even criminal charges—filed against them for failing to comply properly with any of these requirements makes mistakes very expensive.

63.     While Plaintiffs want to speak and associate about ballot issues in the future, the burden and cost of complying with these requirements are making them—and will continue to make them—avoid doing so.

64.     Plaintiffs want to speak and associate about ballot issues now and in the future without fear or threat of being prosecuted or investigated for violating the campaign-finance laws.

65.     In sum, and as described above, Florida's campaign-finance laws create a significant chilling effect that has prevented—and continues to prevent—the Plaintiffs and other similarly situated groups from exercising their constitutional rights of free speech and association.

## CONSTITUTIONAL VIOLATIONS

### First Claim for Relief

### (First Amendment—Prior Restraint)

66.     Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

67.     Chapter 106 of the Florida Statutes, and the rules and regulations promulgated thereunder, require groups that anticipate receiving or spending more than $500 for the purpose of expressly advocating the passage or defeat of a ballot issue to register with the state within 10 days of formation or, if later, within 10 days of receiving information that causes the committee to anticipate that it will receive contributions or make expenditures in excess of $500. Fla. Stat. § 106.03(1)(a).

68.     Plaintiffs wish to make independent expenditures to communicate with their fellow citizens, but fear that if they choose to speak without first registering, they will be subject to either civil or criminal sanctions.

69.     Due to the language of chapter 106 and its interpretation by the Secretary of State, Plaintiffs believe that prosecution would be likely should they choose to speak without registering beforehand with the state.

70.     This registration requirement serves as a content-based prior restraint on political speech, requiring government registration before allowing groups or individuals to speak.

71.     Both on their face and as applied to Plaintiffs, the requirement that groups must first register with the state before making independent expenditures

17

unconstitutionally burdens and chill rights to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

72. As a direct and proximate result of the registration requirement, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from implementing and enforcing the political-committee provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

## Second Claim for Relief

### (First Amendment—Burdening Protected Speech: Registration, Reporting, and Disclosure)

73. Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

74. Chapter 106 of the Florida Statutes, and the rules and regulations promulgated thereunder, impose onerous registration, reporting, and disclosure requirements on groups that make independent expenditures.

75. The registration, reporting, and disclosure requirements for political committees impose substantial compliance costs for groups that merely advocate the passage or defeat of a ballot issue. These costs are excessive in relation to any purported state interest.

76. Both on their face and as applied to Plaintiffs, the registration, reporting, and disclosure requirements for political committees unconstitutionally burden and chill

rights to free speech and association in violation of the First and Fourteenth Amendments to the United States Constitution.

77.     As a direct and proximate result of the registration, reporting, and disclosure requirements for political committees, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from implementing and enforcing the political-committee provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

### Third Claim for Relief

#### (First Amendment—Burdening Protected Speech: Funding and Expenditure Restrictions)

78.     Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

79.     Political committees are prohibited from obligating or spending contributions received within five days of the election. Penalties for knowingly and willfully violating this provision are equal to twice the amount contributed in violation. Fla. Stat. § 106.08(4), (8).

80.     Political committees are also prohibited from accepting cash contributions over $50. Fla. Stat. § 106.09.

81.     Both on their face and as applied to Plaintiffs, the restrictions on when, how, and from whom political committees may accept contributions or make

expenditures unconstitutionally burden and chill rights to free speech and association in violation of the First and Fourteenth Amendments to the United States Constitution.

82.     As a direct and proximate result of the restrictions on when, how, and from whom political committees may accept contributions or make expenditures, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from implementing and enforcing the political-committee provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

### Fourth Claim for Relief

### (First Amendment—Compelled & Anonymous Speech: Disclaimers)

83.     Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

84.     All independent expenditures—whether paid for by an individual or a group—are also required to prominently state: "Paid political advertisement paid for by (Name and address of person paying for communication) independently of any (candidate or committee)." Fla. Stat. § 106.071(2). The Florida Elections Commission is authorized to impose a fine of up to $1,000 for any violation. Fla. Stat. § 106.265(1); *see also* Fla. Admin. Code 2B-1.003(2)(d) (limiting fine to $250 for minor violations of the disclaimer requirement). In addition, failure to include this statement is a first-degree misdemeanor. Fla. Stat. § 106.071(4).

85.    Both on its face and as applied to Plaintiffs, the disclaimer requirement for independent expenditures compels speech in violation of the First and Fourteenth Amendments to the Constitution of the United States by requiring Plaintiffs and others similarly situated to identify themselves on the face of their advertisements. By doing so, the disclaimer requirement necessarily reduces the amount of time during Plaintiffs' advertisement that can be devoted to Plaintiffs' political message.

86.    Both on its face and as applied to Plaintiffs, the disclaimer requirement for independent expenditures burdens and chills rights to anonymous speech and association under the First and Fourteenth Amendments to the Constitution of the United States by requiring Plaintiffs and others similarly situated to disclose their identities and their personal information as a condition of speaking and associating with others.

87.    As a direct and proximate result of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendant is enjoined from implementing and enforcing the political-committee provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

## Fifth Claim for Relief

### (First Amendment—Anonymous Speech: Reporting Requirement)

88.    Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

89.     Under §§ 106.011 *et seq.* and the rules and regulations promulgated thereunder, political committees must disclose all contributions they receive, including the full name, address, and occupation of each person who has made one or more contributions within the reporting period, together with the amount and date of the contribution. For contributions of $100 or less, the occupation or principal type of business need not be listed. Fla. Stat. § 106.07(4)(a)1.

90.     Upon information and belief, all reports filed with the Secretary are considered public records and the contents of those reports are made available on the Secretary's website.

91.     Both on their face and as applied to Plaintiffs, the disclosure requirements for political committees burden and chill rights to anonymous speech and association under the First and Fourteenth Amendments to the Constitution of the United States by requiring Plaintiffs and others similarly situated to disclose their identities and their personal information as a condition of speaking and associating with others.

92.     As a direct and proximate result of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendant is enjoined from implementing and enforcing the political-committee provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

**Sixth Claim for Relief**

**(Fourteenth Amendment—Equal Protection)**

93.     Plaintiffs incorporate and reallege the allegations in ¶¶ 1-65 of this complaint as though set forth in this section.

94.     While Plaintiffs will be required to register and report as a political committee if they receive or spend more than $500 on their political speech, other associations of individuals, most notably business corporations, are not required to do so. Fla. Stat. § 106.011(1)(b)2.

95.     Both on their face and as applied to Plaintiffs, the laws that apply to political committees violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by subjecting Plaintiffs and others similarly situated to burdensome regulations while exempting groups of individuals engaged in similar speech from those regulations.

96.     As a direct and proximate result of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendant is enjoined from implementing and enforcing the electioneering communications provisions of §§ 106.011 *et seq.*, Plaintiffs and others similarly situated will continue to suffer great and irreparable harm.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

1. For entry of judgment declaring that Florida Statute §§ 106.011, *et seq.*, and the rules and regulations promulgated thereunder are unconstitutional on their face and as applied to the extent that they: impose registration, reporting, and disclosure obligations for groups that independently advocate the passage or defeat of ballot issues; constitute a prior restraint of political speech; impose funding or expenditure restrictions on when, how, and from whom contributions can be accepted or used; impose disclaimer requirements on those who publish and distribute communications urging the passage or defeat of ballot issues; and impose differential burdens on similarly situated speakers.

2. For entry of preliminary and permanent injunctions against the Defendants prohibiting the enforcement of these regulations, laws, rules, and policies;

3. For an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

4. For such further legal and equitable relief as the Court may deem just and proper.

Dated: September 28, 2010.

Respectfully submitted,

**INSTITUTE FOR JUSTICE**

By: /s/ Paul M. Sherman
William H. Mellor (DC Bar No. 462072)
Paul M. Sherman (DC Bar No. 978663)
Robert W. Gall (DC Bar No. 482476)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854

Tel: (703) 682-9320
Fax: (703) 682-9321
Email: wmellor@ij.org, psherman@ij.org,
bgall@ij.org
*Attorneys for Plaintiffs*

**RUMBERGER, KIRK & CALDWELL, P.A.**
Darren A. Schwartz (Bar No. 0853747)
215 South Monroe Street, Suite 130
Tallahassee, FL 32301
Tel:  (850) 222-6550
Fax:  (850) 222-8783
Email: dschwartz@rumberger.com
*Local Counsel for Plaintiffs*