IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 1:10-cv-00423-RH/WCS

ANDREW NATHAN WORLEY, et al.,

    Plaintiffs,

        v.

DAWN K. ROBERTS, et al.,

    Defendants.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The state Defendants provide this response in opposition to the preliminary injunctive relief that Plaintiffs seek. Plaintiffs fail to meet the four criteria necessary for injunctive relief. No substantial likelihood of success exists on their First Amendment claims; their claim of irreparable harm is unsupported; and the public interest and balance of harms favor the state.

**BACKGROUND**

Government regulation of individuals pooling their resources in an effort to influence voting is well-established both federally and in Florida. The Federal Election Campaign Act of 1971 required campaigns and political committees to report the names, addresses, and occupations of donors of $200 or more. 2 U.S.C. §431. The State of Florida followed suit and for almost 40 years has maintained certain registration and disclosure requirements of applicable groups seeking to expressly advocate the election

or defeat of a candidate or the passage or defeat of an issue. §106.011, Fla. Stat. (2009). Courts have held such regulation is essential to insuring that voters have sufficient information about those trying to sway their decision before entering the voting booth. *E.g.*, *Citizens United v. Federal Election Commission*, 130 S.Ct. 876, 914 (2010) ("disclosure could be justified based on a governmental interest in 'providing the electorate with information' about the sources of election-related spending.")

In this case, Plaintiffs want to pool their money to expressly advocate against a proposed amendment to the Florida Constitution but do not want to form a political committee as Florida law requires. This proposed amendment, known as Amendment 4, proposes that all changes to local government comprehensive land-use plans will require a taxpayer-funded referendum. Proponents of Amendment 4, principally the political committee, Florida Hometown Democracy, Inc., began their effort in June 2005. The initiative was certified for the ballot four years later in June 2009. Duly-registered political committees supporting and opposing the passage of Amendment 4 have collected and spent millions of dollars hoping to influence voters while complying with Florida's campaign finance statutes. On September 28, 2010, a mere five weeks before the general election, Plaintiffs filed this action claiming these same laws have chilled their ability to speak about Amendment 4.

Amendment 4 is but one of six proposed amendments to the Florida Constitution that will appear on the November 2 ballot. In addition, Floridians will be asked to choose a governor, a U.S. senator, members of Congress, state cabinet officers, as well as district representatives to the Florida Legislature and local government leaders. At this late date,

should the existing laws be struck, the state may not have an opportunity to appeal before the general election. Certainly, it will not be able to act legislatively. The potential for a compromised election if interest groups are allowed to unconditionally advocate is compelling and the results could be significant.

Indeed, after this Court struck Florida's then existing electioneering communication laws in *Broward Coal. of Condos., Homeowners Ass'ns and Community Orgs., Inc. v. Browning*, No. 4:08cv445-SPM/WCS, 2009 WL 1457972, at *1 (N.D. Fla. May 22, 2009), a "no-holds-barred political brawl" ensued in a state senate special election in which unchecked interest groups attempted to intimidate senior citizens with racially tinged mailers warning of Black Panthers and "armed thugs" at the voting booth. Aaron Deslatte, *Thrasher in tough fight for King's Senate seat*, Orlando Sentinel (Aug. 30, 2009), *available at* http://articles.orlandosentinel.com/2009-08-30/news/0908290125_1_thrasher-jacksonville-lawyers-present (last visited Oct. 12, 2010). Absent any means of curtailing such abuse of the open electioneering communication loophole, the state could not protect the integrity of the election process and the well-recognized informational interest of the public to know who is speaking to them about campaign issues.

## ARGUMENT

In order to obtain the preliminary injunction they seek, Plaintiffs must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued; (3) that such injury would outweigh any harm the injunction would bring to the Defendant; and (4) that granting the injunction would not disserve the

public interest. *See Horton v. City of St. Augustine*, 272 F. 3d 1318, 1326 (11th Cir. 2001). As explained below, Plaintiffs have failed to satisfy the test.

## I. PLAINTIFFS ARE UNLIKELY LIKELY TO SUCCEED ON THE MERITS

### A. Strict Scrutiny and Exacting Scrutiny

Plaintiffs challenge Florida's political committee registration and disclosure laws. They argue for strict scrutiny, yet that is the not the correct standard under which to evaluate these laws. Florida's law requires political committees to register, make regular reports, and comply with disclosure and disclaimer requirements. In *Citizens United*, the Supreme Court reiterated that "exacting scrutiny" rather than "strict scrutiny" applies to such requirements. 130 S. Ct. at 914; *see also John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2818 (2010) (explaining that challenges to disclosure requirements are reviewed under the "exacting scrutiny" standard); *South Carolina Citizens for Life, Inc. v. Krawcheck,* No. 4:06-cv-2773-TLW, 2010 WL 3582377, at *18 (D.S.C. Sept. 13, 2010) ("The [*Citizens United*] Court noted that disclosure requirements are subject to "exacting scrutiny" which "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest.").

Furthermore, in *Citizens United*, the Supreme Court recognized the importance of such disclosures: "The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way." 130 S. Ct. at 916. The Court went on to explain, "[t]his transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Id*. at 915-16.

The Supreme Court long ago concluded that federal reporting and disclosure requirements survive exacting scrutiny. *See Buckley v. Valeo*, 424 U.S. 1, 82 (1976) [*Buckley I*] (upholding the reporting, recordkeeping, and disclosure provisions of the Federal Election Campaign Act and noting the State's interest in keeping voters informed of candidate's constituencies); *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 202 (1999) [*Buckley II*] (noting the state's interest in keeping voters informed about "where political campaign money comes from");

And the federal circuit courts have repeatedly reaffirmed the importance of the informational interest to the public. *Canyon Ferry Rd. Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1032 (9th Cir. 2009) (Montana's informational interest is generally "important" in the context of Montana's statewide ballot issues.); *California Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1179 (9th Cir. 2007) (in the context of disclosure requirements, the government's interest in providing the electorate with information related to election and ballot issues is well-established ) (citing *McConnell*, 540 U.S. at 196; *Buckley I*, 424 U.S. at 66.); *Nat'l Org. For Marriage v. McKee*, 666 F. Supp. 2d 193, 205 (D. Me. 2009) (stating that the Supreme Court has continued to uphold disclosure and registration requirements because of the government's important interest in making the information available to voters). Indeed, in a post-*Citizens United* case, the D.C. Circuit reaffirmed that "[t]he Supreme Court has consistently upheld organizational and reporting requirements against facial challenges." *SpeechNow.org v. Federal Election Comm'n*, 599 F.3d 686, 696-697 (D.C. Cir. 2010).

Here, Florida's political committee laws are even less burdensome than federal regulations and, likewise, survive exacting scrutiny. Such groups must file registration statements (consisting of a two-page form available at the website of the Department of State[1]) and disclosures of contributions and expenditures (each of which are one-page forms also available at the DOS website[2]). These requirements are minimal and sufficiently relate to the state's substantial interest in keeping the voters informed about where political campaign money comes from. *See Ctr. for Individual Freedom v. Madigan*, No. 10 C 4383, 2010 WL 3404973, at *1 (N.D. Ill. Aug. 26, 2010) (statute requiring registration and reporting similar to Florida statute valid).

### 1. Florida's Law Survives Exacting Scrutiny

Plaintiffs cite to the Supreme Court's statement in *Citizens United* that formation of a PAC as an alternative to corporate speech is an onerous burden. [Pl.'s Initial Br. at 10 (citing *Citizens United*, 130 S. Ct. at 897-98)]. That argument misconstrues *Citizens United*. *Citizens United* held that an outright ban on corporate expenditures for electioneering communications is unconstitutional. 130 S. Ct. at 913. In particular, the BCRA made it "a felony for all corporations . . . to expressly advocate the election or defeat of candidates or to broadcast electioneering communications within 30 days of a primary election and 60 days of a general election." *Id*. at 897. *Citizens United* stated that a corporation's option of forming a PAC segregated from the corporation was an

---

[1] Form available at http://election.dos.state.fl.us/forms/pdf/DSDE103.pdf (last visited Oct. 12, 2010).
[2] Forms for contributions available at http://election.dos.state.fl.us/forms/pdf/DSDE13.pdf (last visited Oct. 12, 2010). Forms for expenditures available at http://election.dos.state.fl.us/forms/pdf/DSDE14.pdf (last visited Oct. 12, 2010).

expensive and burdensome alternative to an unconstitutional ban on speech. *See id.* at 897-88.

Plaintiffs cannot claim any similar burden. Florida law does not place an outright ban on speech. Rather, Florida law merely requires that an organization register and make certain disclosures in the event it engages in express advocacy. That requirement is substantially related to the state's sufficiently important interest in helping its citizens make informed choices in the political marketplace. *McConnell*, 540 U.S. at 197. As the Court in *McConnell* recognized, "Plaintiffs' argument for striking down BCRA's disclosure provisions does not reinforce the precious First Amendment values that Plaintiffs argue are trampled by BCRA, but ignores the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace." *Id*.

Plaintiffs fail to make any legitimate comparison between the federal PAC requirements and the Florida political committee requirements. Other courts faced with this argument have looked at the *actual* burden imposed by the state regulations. In *McKee*, the Maine District Court found registration and reporting requirements that were substantially similar to Florida's were not burdensome. 666 F. Supp. 2d at 207. Similarly, the D.C. Circuit in *SpeechNow.org* held "[n]or do the organizational requirements that SpeechNow protests, such as designating a treasurer and retaining records, impose much of an additional burden upon SpeechNow." 599 F.3d at 697; *see also, Human Life of Washington, Inc. v. Brumsickle*, No. C08-0590-JCC, 2009 WL 62144, at *11 (W.D. Wash. Jan. 8, 2009) (reporting requirements not particularly

7

onerous); *Alaska Right To Life Comm. v. Miles*, 441 F.3d 773, 792 (9th Cir. 2006) (reporting provisions in Alaska statutes are constitutional.)

Arguing that Florida's PC requirements are burdensome and consequently unconstitutional, Plaintiffs take issue with Florida's requirement that political committees (1) must appoint a treasurer; (2) must disclose the identities of all contributors and recipients of expenditures, regardless of the amount, and (3) must not spend money collected during the five days prior to the election until after the election.  As explained below, these arguments are meritless.

Under Florida law, groups of two or more individuals that wish to engage in the type of political speech described in section 106.011 (1)(a), Florida Statutes, must register as a political committee.  Registration and disclosure requirements, and the requirement that political committees appoint a treasurer, conditions which are similar to those found in Florida's campaign finance statutes, have previously been upheld by federal courts.  *See Citizens United*, 130 S. Ct. at 914 ("Disclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' . . . and 'do not prevent anyone from speaking'. . . .) (citations omitted).  In *SpeechNow.org*, 599 F.3d at 691-92, recordkeeping and reporting requirements of the BCRA, which are more onerous than Florida's laws, were held constitutional.  The D.C. Circuit noted that "[t]he Supreme Court has consistently upheld organizational and reporting requirements against facial challenges . . . based on a governmental interest in 'provid[ing] the electorate with information' about the sources of political campaign funds." *Id.* at 696 (quoting *Buckley v. Valeo*, 424 U.S. 1, 66

(1976)). Additionally, in *McConnell*, 540 U.S. at 196, the Supreme Court recognized that "the important state interests that prompted the *Buckley* Court to uphold FECA's disclosure requirements—providing the electorate with information, deterring actual corruption and avoiding any appearance thereof . . . apply in full to the BCRA."

Many other courts have reached the same conclusion. *See Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 202 (1999) [*Buckley II*] (noting the state's interest in keeping voters informed about "where political campaign money comes from"); *Canyon Ferry Rd. Baptist Church of East Helena, Inc. v. Unsworth,* 556 F.3d 1021, 1032 (9th Cir. 2009) (Montana's informational interest is generally "important" in the context of Montana's statewide ballot issues.); *California Pro-Life Council, Inc. v. Randolph,* 507 F.3d 1172, 1179 (9th Cir. 2007) (in the context of disclosure requirements, the government's interest in providing the electorate with information related to election and ballot issues is well-established ) (citing *McConnell,* 540 U.S. at 196; *Buckley*, 424 U.S. at 66.); *Nat'l Org. For Marriage v. McKee*, 666 F. Supp. 2d 193, 205 (D. Me. 2009) (upholding registration and reporting requirements substantially similar to Florida's requirements and noting that the Supreme Court has continued to uphold disclosure and registration requirements because of the government's important interest in making the information available to voters).

And these types of disclosure and disclaimer requirements have been upheld as equally applying to ballot initiatives and issue advocacy measures*. See e.g., Citizens Against Rent Control v. City of Berkley*, 454 U.S. 290 (1981) (upholding regulations compelling the disclosure of expenditures and contributions in the ballot-initiative

context); *Alaska Right To Life Committee v. Miles,* 441 F.3d 773 (9th Cir. 2006) (challenged reporting requirements did not violate First Amendment; compelling state interests justified application of challenged reporting requirements; and disclosure requirements did not violate First Amendment as applied to corporation.); *Canyon Ferry*, 556 F.3d 1032; *California Pro-Life Council, Inc.,* 507 F.3d 1172.

Likewise here, Florida's disclaimer and disclosure requirements survive exacting scrutiny. Indeed, the requirements are minimal and sufficiently relate to the state's substantial interest in keeping the voters informed about where political campaign money originates. Accordingly, the nominal burden imposed by Florida law is constitutional on its face and as applied.

Relying on *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), Plaintiffs attempt to argue that the only possible interest that can support the imposition of registration and reporting requirements like those in Florida law is the interest in fighting corruption, especially *quid pro quo* corruption and the appearance of corruption, which does not exist here. This argument is misguided. When dealing with limits on contributions or expenditures, the Court has held that the informational interest asserted here is insufficient. *See Citizens United,* 130 S.Ct. at 883. But the Supreme Court treats registration and reporting requirements such as those at issue here differently and has upheld the similar provisions of the FECA and the BCRA based on the informational interest asserted here. *See Citizens United,* 130 S.Ct. at 914. In *Federal Election Com'n v. Public Citizen,* 268 F.3d 1283, 1289 (11th Cir. 2001), the court distinguished *McIntyre* and affirmed the validity of disclosures in § 441d(a), stating that "Among the rationales

offered in support of the disclosures in *Buckley* was the governmental interest in "provid[ing] the electorate with information as to where the political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office."

If Plaintiffs are permitted to pool their money in order to purchase advertising urging voters to defeat a proposed amendment in the upcoming November election, and they are not required to disclose the source of the advertising or the funding resources, then Florida voters will not have the benefit of learning the source of Plaintiffs' election-related spending and will consequently be less informed when making a choice in the political marketplace. That would defeat the government's important interest in keeping the public informed as to where political money comes from.

### B. Section 106.08(4), Florida Statutes, is constitutional

Plaintiffs also challenge section 106.08(4), Fla. Stat., which prohibits political committees from spending money collected during the last five days prior to the election until after the election. But that argument is simply an extension of the challenge to Florida's disclosure requirements. The five day provision merely ensures that the public is made aware of the individuals who make political contributions *before* the day they must vote. Under Florida's reporting requirements, the last reporting day for political committees is the Thursday before the Tuesday of the election. *See* Fla. Dep't of State, Div. of Elections, *Political Committee Handbook*, 4 (June 2010). In the current election cycle, that is October 29, five days before the November 2 election. The October 29 report should include all contributions received until midnight October 28. Prohibiting

political committees from spending money collected after the last reporting deadline before the election until after the election merely furthers the State's interest in providing public information.  If this provision were not in place, big contributors could strategically wait until after the last reporting day to funnel large amounts of money to a political committee, and it would not be reported until after the people voted.  Florida's Third District Court of Appeal recognized this important purpose in *Ferre v. State ex rel. Reno*, 478 So.2d 1077, 1080 (Fla. 3rd DCA 1985), finding:

> A second compelling governmental interest is the goal of allowing the public to be informed *before* an election of the identities of persons contributing to the campaign of a particular candidate. In the absence of the challenged statutes, a candidate could conceal the identity of supporters until after the election when it is too late for the revelation to be considered by the voters in casting their ballots.

Large amounts of strategically withheld funds could certainly work to influence the outcome of an election, much like what occurred in the wake of *Broward Coal. of Condos., Homeowners Ass'ns and Community Orgs., Inc. v. Browning*, No. 4:08cv445-SPM/WCS, 2009 WL 1457972 (N.D. Fla. May 22, 2009).  And if the public is unaware of the source of those funds, then the State's interest in informing the voters will have been thwarted.

It also should be noted that this limitation does not regulate the content of any speech, nor does it keep political committees from speaking.  On the contrary, political committees can spend unlimited reported funds during the five days before an election.  Political committees can also collect funds in the last days before election.  This limitation of section 106.08(4) merely prevents political committees from spending

unreported funds during the last five days prior to an election.  This provision is content-neutral and narrowly tailored to serve this important state interest.

### C.  Disclaimer

Plaintiffs complain that the disclaimer requirement in section 106.071(2), Fla. Stat., violates their First Amendment rights in two ways.  First, they claim that the disclaimer requirement "compels speech, thereby forcing Plaintiffs to change their political message" and second they claim that it violates "the right to engage in anonymous speech."  Neither of these claims has merit.

In *Citizens United*, 130 S.Ct. at 914 -15, the Supreme Court addressed the disclaimer requirement found in section 311 of the BCRA.  Plaintiffs there claimed, among other things, that section 311 "decreases both the quantity and effectiveness of the group's speech by forcing it to devote four seconds of each advertisement to the spoken disclaimer."  *Id*.  The Court responded by stating that "the disclaimers required by section 311 "provid[e] the electorate with information and insure that the voters are fully informed" about the person or group who is speaking."  *Id*. (citations omitted).  The Court went on to hold that "We rejected these arguments in *McConnell, supra*, at 230-231, 124 S. Ct. 619. And we now adhere to that decision as it pertains to the disclosure provisions."  *Id.*

In reaching this conclusion, the Court relied upon *McConnell*, which held: "We think BCRA § 311's inclusion of electioneering communications in the FECA § 318 disclosure regime bears a sufficient relationship to the important governmental interest of "shed[ding] the light of publicity" on campaign financing."  *McConnell,* 540 U.S. at 230-

13

231. Both *Citizens United* and *McConnell* relied on the opinion in *Buckley,* 424 U.S. at 78, holding that, by enacting the disclosure requirements, Congress "wished to promote full disclosure of campaign-oriented spending to insure both the reality and the appearance of the purity and openness of the federal election process." Finally, in *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 792 (1978), the Court stated: "Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected." *Cf. U.S. v. Harriss,* 347 U.S. 612, 625-626 (1954) (disclosure of lobbying activities).

Here again Plaintiffs rely almost exclusively on *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), for their assertion that they need not identify themselves in their advertisements. Although *McIntyre* did recognize some right to anonymity with respect to the type of communications at issue in that case, it is entirely unclear how far that right goes.[3] In *McIntyre*, the Court made a distinction between "the activities of candidates and their organized supporters" and "individuals acting independently and using only their own modest resources." 514 U.S. at 351-52. What is clear is that the right does not extend to disclaimers on paid political advertising by political committees. The Court in *Citizens United* never cited *McIntyre* for the proposition that anonymous political speech is protected. Only Justice Thomas in dissent cited *McIntyre* for the proposition that "Congress may not abridge the "right to anonymous speech" based on

---

[3] The Florida Supreme Court narrowed the scope of the disclaimer statutes, including § 106.071, in *Doe v. Mortham*, 708 So.2d 929, 934 (Fla.,1998), holding them "inapplicable to the personal pamphleteering of "individuals acting independently and using only their own modest resources." (citing *McIntyre*)

the simple interest in providing voters with additional relevant information." *Citizens United*, 130 S.Ct. at 980.

In *Citizens United*, the Supreme Court validated the use of disclaimers to inform the public who is speaking to them. *Id.* at 915. In addition, the Court expanded the universe of communications susceptible to disclosure and disclaimer requirements beyond express advocacy and its functional equivalent. *Id.* ("[W]e reject Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy."); *Ctr. For Individual Freedom v. Madigan*, No. 10 C 4383, 2010 WL 3404973, at *4 (N.D. Ill. Aug. 26, 2010) ("Recently, in *Citizens United*, the Supreme Court expressly rejected the contention that election-law disclosure requirements are limited to express advocacy or its functional equivalent.").

In sum, the Court has laid out a new paradigm for election campaign regulation in which speech is not prohibited but the prophylactic effects of disclosure protect the integrity of the electoral process. Within this paradigm there is no principled reason to distinguish between electioneering for a candidate and for a ballot initiative because the public's informational interest is the same in each case. As set forth above, the Court has abandoned that distinction and the disclaimer requirement is valid as to candidate or initiative elections.

## II.  PLAINTIFFS ARE NOT LIKELY TO SUFFER IRREPARABLE HARM

Plaintiffs submit that their loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. But, as discussed above, Florida's campaign finance statutes do not infringe on their First Amendment freedoms.

The statutes merely require that they register as a political committee if in fact they engage in express advocacy.

Moreover, Plaintiffs delayed filing their complaint until September 28, just weeks prior to the upcoming general election; such delay works against their claim of irreparable harm. *See Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("[Delay] may . . . indicate an absence of the kind of irreparable harm required to support a preliminary injunction."); *Badillo v. Playboy Entm't Grp., Inc.*, No. 8:04-cv-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla., Apr. 16, 2004) ("In determining whether harm is irreparable, courts consider, as one factor, the delay of the movant in seeking relief."); *Pippin v. Playboy Entm't Grp., Inc.*, No. 8:02-cv-2239-T-17EAJ, 2003 WL 21981990, at *2 (M.D. Fla., Jul. 1, 2003) ("[d]elay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm."). This statute has been in effect for nearly 40 years. Contriving to bring a challenge on the eve of an election does not create irreparable harm.

### III.  INJURY TO THE STATE OUTWEIGHS ANY HARM TO PLAINTIFFS

Enjoining the State from enforcing its registration and disclosure statutes in the days just before an election would substantially injure the State and harm the public. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers . . . injury." *New Motor Vehicle Bd. of Cal. v.*

16

*Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., Circuit Justice).  A "presumption of constitutionality" attaches to every legislative act, and that presumption is "an equity to be considered in favor of . . . [the government] in balancing hardships." *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., Circuit Justice).

Here, the imminent harm to the public if the State is not permitted to enforce its political committee registration and disclosure statutes far outweighs Plaintiffs' desire not to follow the minimal requirements of the law.  In these key days leading up to the election, a temporary lifting of the challenged statutes would allow countless organizations to engage in electioneering practices, encouraging or discouraging the public from voting for specific candidates or proposed constitutional amendments, while keeping the public in the dark as to the relevant constituencies.  That practice conflicts with the Supreme Court's recognition of the government's sufficient interest in keeping the public informed.  *See Buckley I*, 424 U.S. at 82; *Buckley II*, 525 U.S. at 202 (noting the state's interest in keeping voters informed about "where political campaign money comes from").  Requiring political committees to reveal their financial campaign activities to the public serves a sufficiently important government interest in preventing corruption and educating the public.  Without knowing what entity sponsored a political advertisement favoring or disfavoring a particular candidate or ballot question, the public will be less able to make informed choices at the polls.  In that case, the harm to the State is irreparable, and substantially outweighs any minimal harm to Plaintiffs.

**IV. AN INJUNCTION WOULD DISSERVE THE PUBLIC INTEREST**

The public interest would be disserved by an order enjoining the operation of Florida's public campaign financing system in the middle of an election process already underway. Florida unquestionably has "a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006) (citing *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989)). Moreover, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 4. The courts have routinely recognized "that election cases are different from ordinary injunction cases. Interference with impending elections is extraordinary." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003).

This Court considered the disruption of the election process when a suit was brought challenging Florida's congressional districting plan seven weeks before the first primary election. In *Johnson v. Smith*, No. TCA 94-40025-WS 1994 WL 907596, at *1 (N.D. Fla. Jul. 18, 1994), this Court declined to enter a preliminary injunction "primarily because the court finds that the public interest would not be served by an act that would inevitably disrupt an election process already well underway." *See also, Ausman v. Browning,* CASE NO. 4:07cv519-RH/WCS (order denying preliminary injunction, 1/8/08).

As stated above, the public deserves to be informed of what organization is behind a political advertisement advocating a particular candidate for office. If that information is withheld from the public, by way of enjoining the State from enforcing its

18

registration and disclosure statutes, electors will be less likely to make informed choices at the polls. For that reason, granting an injunction would disserve the public's interest.

## CONCLUSION

Plaintiffs have failed to establish the four requirements for a preliminary injunction and their motion should be denied.

Respectfully submitted this 14th day of October, 2010.

                                          BILL MCCOLLUM
                                          ATTORNEY GENERAL

| | |
|---|---|
| C.B. Upton | /s/ Jonathan A. Glogau |
| General Counsel | Jonathan A. Glogau |
| Fla. Bar No. 0037241 | Chief, Complex Litigation |
| Florida Department of State | Fla. Bar No. 371823 |
| R.A. Gray Building | Diane G. DeWolf |
| 500 S. Bronough Street | Deputy Solicitor General |
| Tallahassee, FL 32399-0250 | Fla. Bar No. 59719 |
| 850-245-6536 | PL-01, The Capitol |
| 850-245-6127 (fax) | Tallahassee, FL 32399-1050 |
| cbupton@dos.state.fl.us | 850-414-3300, ext. 4817 |
| *Counsel for Defendant* | 850-414-9650 (fax) |
| *Secretary of State Dawn K. Roberts* | jon.glogau@myfloridalegal.com |
| | *Counsel for Defendants* |

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that the foregoing document was served by filing in this court's CM/ECF system this 14th day of October, 2010, on:

William H. Mellor
Paul M. Sherman
Robert W. Gall
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854

Darren A. Schwartz
215 South Monroe Street, Suite 702
Tallahassee, FL 32301

                                                                 /s/ Jonathan A. Glogau
                                                                       Attorney