# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

ANDREW NATHAN WORLEY et al.,

      Plaintiffs,

v.                                CASE NO.  4:10cv423-RH/WCS

DAWN K. ROBERTS et al.,

      Defendants.

_____/

## ORDER GRANTING A PRELIMINARY
## <u>INJUNCTION ON ONE ISSUE ONLY</u>

This case presents a substantial challenge to parts of the Florida campaign-financing statutes.  The plaintiffs are four individuals who wish to buy radio advertisements opposing a proposed constitutional amendment that will be on the November 2, 2010, general-election ballot.  They have moved for a preliminary injunction.  This order grants the motion in one narrow respect, allowing the plaintiffs to spend contributions received in the last five days before the election if, before they are spent, the contributions are fully disclosed.  The order denies the motion in all other respects.

# I.  Background

Proposed amendments to the Florida Constitution must be approved by the voters.  Proposed Amendment 4 on the November 2, 2010, general-election ballot would require amendments to a local government's comprehensive plan to be approved in a public referendum.  The plaintiffs are four individuals who oppose Amendment 4.  They wish to contribute $150 each, for a total of $600, to purchase air time for a radio advertisement they have written opposing Amendment 4.  The plaintiffs propose to run the advertisement 30 times; the air time costs $20 for a 30-second slot.

The plaintiffs also wish, however, to accept contributions—including anonymous and cash contributions—and to use the funds to run the advertisement more often.  The plaintiffs do not wish to identify themselves in the advertisement because they wish to use all of the purchased air time to convey the substance of the message and wish for the message to be evaluated based on its content, not based on the plaintiffs' identity.  The plaintiffs have not, however, attempted to keep their identities secret.

The plaintiffs assert, and the defendants seem to concede, that even if the plaintiffs do no more than spend their initial $600, they will become a "political committee" under Florida law.  *See* § 106.011(1)(a), Fla. Stat. (defining a "political committee" to include a combination of two or more individuals who accept

contributions of—or spend—more than $500 in a year to influence an election, including on a ballot issue).[1]  The plaintiffs assert, and the defendants seem to concede, that this in turn would require the plaintiffs to comply with all the attendant regulations.  *See* § 106.021(1) (appoint a treasurer and establish a campaign depository); § 106.03(1)(a) (register with the Division of Elections); § 106.05 (deposit all funds within five days of receipt); § 106.06(1) (keep detailed accounts current within two days); § 106.06(3) (maintain records for two years); § 106.07(4)(a) (file periodic reports of all contributions and expenditures); § 106.11 (disburse funds only by check); § 106.22(10) (submit to random audits by the Division of Elections).  The plaintiffs assert, and the defendants seem to concede, that Florida law would prohibit the plaintiffs from accepting anonymous contributions of any size or cash contributions of more than $50.  *See* § 106.09. The plaintiffs also assert, and the defendants seem to concede, that Florida law would prohibit the plaintiffs from airing anonymous advertisements, *see* § 106.071(2), or advertisements (for a given election) that are paid for with contributions received during the last five days before that election.  *See* § 106.08(4).  The five-day provision corresponds with the disclosure requirement; the last deadline for a disclosure report before an election is five days before the

---

[1] Citations in this order to the Florida Statutes are to the officially-compiled 2010 version as now in effect.

election.  *See* Div. of Elections, Fla. Dep't of State, *Political Committee Handbook* 4 (2010), *available at*

<http://election.dos.state.fl.us/publications/pdf/2010/2010PolCmtHandbook.pdf>.

## II.  The Motion and Governing Standards

The plaintiffs filed this case on September 28, 2010.  They moved for a preliminary injunction on October 4 and simultaneously agreed to defer consideration of the motion until after the defendants—state elections officials— filed a response on October 14.  The plaintiffs asked for a ruling by October 26 so that they could proceed as appropriate in light of the ruling.

I set a hearing for October 18, the second business day after the filing of the defendants' response to the motion.  The evidentiary record consists only of declarations and exhibits; neither side presented live testimony.  This order is going out as soon as it could be prepared—somewhat coincidentally, on October 26, the date by which the plaintiffs said they needed an answer.

As both sides agree, issuance of a preliminary injunction is governed by four factors:  (1) whether the proponent has a substantial likelihood of success on the merits; (2) whether the proponent will suffer irreparable injury if an injunction is not entered; (3) whether the threatened injury outweighs whatever damage the proposed injunction may cause the opponent; and (4) whether the injunction would be adverse to the public interest.  *See, e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1290

(11th Cir. 2010); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).

This order addresses these factors for each of the challenged provisions.  The provisions fall into four categories:  the ban on anonymous contributions (addressed below in section III); the registration and other requirements for political committees (addressed in section IV); the ban on anonymous radio advertisements (addressed in section V); and the limitation on spending funds raised in the last five days before the election (addressed in section VI).

### III.  Disclosing Contributors

The plaintiffs say they wish to accept contributions from others who, like the plaintiffs, oppose Amendment 4.  The plaintiffs wish to be able to "pass the hat" to accept contributions—including cash—at public gatherings.  But under the challenged provisions of Florida law, the plaintiffs would have to file a public disclosure of all their contributions, no matter how small.  This would prevent passing the hat or otherwise accepting anonymous contributions.

The Supreme Court has repeatedly said that contributor-disclosure requirements are valid.  *See Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 915-16 (2010) (collecting cases); *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 195-96, 124 S. Ct. 619, 157 L. Ed. 2d 491 (2003) (contributions over $1,000); *Buckley v. Valeo*, 424 U.S. 1, 63-68, 96 S. Ct. 612, 46 L. Ed. 2d 659

(1976) (contributions over $100).  And the Supreme Court has said this not only in cases involving candidate elections but also in cases involving ballot issues like the one involved here.  *See Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley, Cal.*, 454 U.S. 290, 299-300, 102 S. Ct. 434, 70 L. Ed. 492 (1981) ("[T]he integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions."); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 792 n.32, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978) ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected.").  *See also Let's Help Florida v. McCrary*, 621 F.2d 195, 200-01 (5th Cir. 1980) (stating in dictum that the same Florida disclosure requirement at issue here is constitutional).  The plaintiffs are unlikely to prevail on the merits of the assertion that they can accept contributions from others and spend the funds on advertisements opposing a ballot measure without disclosing the source of the contributions.

The balance of equities and the public interest also cut against preliminarily enjoining the enforcement of this disclosure requirement.  The need for a constitutional ruling sometimes becomes apparent only on the eve of an election, and when that occurs a court properly moves quickly to ensure that fundamental

rights are not compromised.  *See, e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1296 (11th

Cir. 2010).  But here, unlike in *Scott*, there have been no changes in the relevant

facts or law that explain the last-minute filing of the lawsuit.  This is, instead, an

emergency entirely of the plaintiffs' own making.  And the disruption that would be

caused by the invalidation of this disclosure requirement, on the eve of the election,

would be substantial.  If the plaintiffs were likely to prevail on the merits, the late

filing of the claim would perhaps not be fatal.  But when a claim seeks to depart

from long-established precedent, and does so too late to allow meaningful appellate

review, the balance of equities and public interest at least suggest caution.

Enforcement of the disclosure requirement will not be preliminarily enjoined.

## IV.  Regulation as a Political Committee

The plaintiffs next challenge the requirement that they register as a "political

committee" and comply with the regulatory burdens that attend that status.  They

rely primarily on *Citizens United v. Federal Election Commission*, 130 S. Ct. 876

(2010).  There the Supreme Court struck down a federal statute that prohibited a

corporation or union from spending its treasury funds to advocate the election or

defeat of a candidate.  The Court said that allowing a corporation or union to speak

through a political action committee did not save the statute, first because speech by

a PAC was not speech by the corporation or union itself, and second because PACs

are "burdensome alternatives; they are expensive to administer and subject to

extensive regulations." 130 S. Ct. at 897.

The plaintiffs assert, and for present purposes I assume, that a "political committee" under Florida law is not materially different from a PAC under the federal provisions at issue in *Citizens United.* Even so, *Citizens United* does not resolve the question of whether Florida can regulate the plaintiffs as a political committee. *Citizens United* involved an outright ban on election-related speech *by a single speaker*. The only purported justification for the ban was that the speaker was a corporation. The Court rejected the proposition that, for this purpose, a corporation had no right to speak, and it held that the ability to speak through a PAC did not save the otherwise-unconstitutional ban on direct speaking by the corporation.

Here, in contrast, Florida law does not prohibit a plaintiff from speaking. Each plaintiff is free to speak as much as the plaintiff chooses and need not register as a political committee in order to do so. It is only the plaintiffs' decision to act *jointly*—and to pool their funds—that triggers the application of the Florida political-committee provisions. The law has long recognized, in many contexts including this one, that there is a difference between individual and joint action.

To be sure, political-committee regulation is burdensome; the Court said so in *Citizens United*. If a multinational corporation can speak without being subjected to this burden, it is hard to explain why four individuals with modest resources

cannot.  The assertion that the plaintiffs cannot constitutionally be subjected to the

full range of Florida's political-committee regulations is not frivolous.  But on

balance, and for purposes only of the preliminary-injunction motion, I conclude that

the plaintiffs are not likely to prevail on the claim that they have a First Amendment

right to act jointly without being subjected to regulation as a political committee.

Denial of a preliminary injunction on this issue also draws support from the

other preliminary-injunction criteria.  A denial of First Amendment rights, standing

alone, can be and usually is an irreparable injury.  *See, e.g.*, *Scott v. Roberts*, 612

F.3d 1279, 1295 (11th Cir. 2010).  But a plaintiff will suffer no irreparable injury

merely by having to write an individual check to a radio station rather than pooling

the same funds with the other plaintiffs.  *See, e.g.*, *KH Outdoor, LLC v. City of*

*Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (noting that a First Amendment

violation "does not automatically require a finding of irreparable injury";

irreparable injury results from "direct penalization" of protected conduct, not

"incidental inhibition") (quoting earlier authorities).  The only reason the plaintiffs

are subject to the political-committee regulations, at least based on the initial

proposal to spend $600 on advertising, is that instead of one plaintiff buying the

entire $600 in air time, or instead of each buying $150 in air time, they wish to buy

$600 in air time collectively, thus becoming "two or more individuals" who have

"accept[ed] contributions" or "ma[de] expenditures" "in excess of $500 during a

single calendar year." § 106.011(1)(a), Fla. Stat.  Nothing in the plaintiffs'

declarations suggests that they have obtained any benefit, or have been able to

engage in any greater or more effective speech, by proceeding in this manner.

To be sure, one of the four plaintiffs has some level of expertise in radio

advertising.  The plaintiffs say they wish to take advantage of the expertise.  Their

assertion seems to be that by taking advantage of the expertise, or perhaps by

otherwise coordinating their efforts, they are acting jointly and thus exceeding the

$500 floor for a political committee, even if they otherwise buy air time separately

and write their own individual checks to the radio station.  But the record gives no

indication that the defendant election officials have so asserted.  And nothing in

Florida law suggests that a person is subject to regulation as a political committee

merely because the person takes free advice on how to draft or place

advertisements.

It bears noting, too, that the plaintiffs seem to have framed their approach for

the very purpose of triggering Florida's political-committee regulations.  Doing so

is unobjectionable; a person may properly choose to act in a way that provides

standing to mount a constitutional challenge to government action.  But the

existence of a readily available alternative means of accomplishing the same

objective does affect the issues of irreparable harm, the balance of equities, and the

public interest.  For the same reasons noted in section III above, entry of a

preliminary injunction on this issue at this time would not comport with the balance of equities and the public interest.

## V.  Disclosing the Advertiser's Identity

The plaintiffs next challenge the provision requiring their proposed radio advertisements to include a statement of their identity.  The plaintiffs assert a right to speak anonymously.  They wish to devote their limited air time to their message, not to identifying themselves, and they wish for the message to be evaluated on its content, not based on the plaintiffs' identities.  The plaintiffs apparently do not assert that their identities are secret or that their views will subject them to reprisal; they have, after all, disclosed their identities in this lawsuit, and they apparently are quite willing for all to know their position.

The Supreme Court has recognized an individual's right to speak anonymously on an issue that will be on a public ballot.  In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995), the Court struck down a fine imposed on a woman who, acting independently of anyone else, circulated anonymous handbills opposing a ballot measure, thus violating a state ban on anonymous campaign literature.  The Court said that the two interests invoked by the state were not sufficient to save the fine.  First, the state's interest in providing the electorate accurate information on the source of an assertion—thus allowing recipients to better evaluate the assertion—was no

different than the state's interest in providing the electorate other relevant
information that a speaker was free to include or leave out of the speaker's
materials.  *Id.* at 348-49.  Second, the state's interest in deterring false or
defamatory statements could be served in other ways, without banning anonymous
speech that was neither false nor defamatory.  *Id.* at 349-51.

     *McIntyre* differs from this case in two respects.  First, *McIntyre* involved
handbills.  This case involves radio advertisements.  The *McIntyre* opinion noted
the distinction, indicating that the statute at issue there banned not only anonymous
handbills but also anonymous radio and television advertisements, and continuing:

> No question concerning [the radio and television] provision is raised in
> this case.  Our opinion, therefore, discusses only written
> communications and, particularly, leaflets of the kind Mrs. McIntyre
> distributed.  *Cf. Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637-
> 638 (1994) (discussing application of First Amendment principles to
> regulation of television and radio).

*Id.* at 338 n.3.  Perhaps an individual's radio advertisement would fetch the same
protection as an individual's handbill; perhaps not.  But the plaintiffs are wrong to
say that *McIntyre* settled the issue.

     Second, and perhaps more importantly for the purposes of this case, *McIntyre*
involved an individual who acted alone.  The plaintiffs in this case have explicitly
chosen to speak as a group.  Indeed, the decision to do so is what gives them
standing to bring the bulk of their challenges to the Florida statutes.  The plaintiffs'

assertion apparently is that *McIntyre* recognized a right to anonymous speech and

that it applies not just to an individual but to a group, no matter how large.

An individual may or may not have a First Amendment right to run an

anonymous radio advertisement addressing a ballot issue.  But under repeated

decisions of the Supreme Court, an individual has no right to receive an anonymous

contribution to fund a radio advertisement addressing a ballot issue, nor a right to

make an anonymous contribution to fund someone else's radio advertisement.  *See,*

*e.g., Citizens Against Rent Control/ Coal. for Fair Hous. v. City of Berkeley, Cal.*,

454 U.S. 290, 299-300, 102 S. Ct. 434, 70 L. Ed. 492 (1981); *First Nat'l Bank of*

*Boston v. Bellotti*, 435 U.S. 765, 792 n.32, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978);

*see also Citizens United*, 130 S. Ct. at 913-14 (upholding a disclosure requirement

for advertisements relating to a candidate election).  Perhaps the pooling of

resources by four individuals equates to a contribution under this line of decisions;

perhaps not.  But again, the plaintiffs are wrong to say that *McIntyre* settled the

issue.  As one of the justices who joined the *McIntyre* opinion noted, "In for a calf

is not always in for a cow."  *McIntyre*, 514 U.S. at 358 (Ginsburg, J., concurring).

These substantive issues need not be addressed on the pending motion.  The

plaintiffs assert an interest in not wasting their limited air time identifying

themselves, and they wish to have their message evaluated only on its merits.  But

the plaintiffs have themselves disclosed their identities in the complaint in this

lawsuit, if not in other places as well, so they have themselves allowed listeners—at least those who care enough to check—to determine the source of the message.  The plaintiffs say that announcing their identities as part of the advertisement will reduce by 20% the time devoted to the message and that the identification requirement thus trenches on core First Amendment values.  But in fact all the plaintiffs will have to do, to air exactly the same message they wish to air, is to pay a little more for a little more air time.  It is, in short, a question of money, and not much money at that.  Even using their own 20% calculation, the plaintiffs will have to spend just $750, or $187.50 apiece, to air the same message they hoped to get for $600, or $150 apiece.  When the issue is ultimately presented on the merits, it will be no answer that the amount of money at issue is small.  But at the preliminary-injunction stage, in analyzing whether an injury is irreparable, the ability to avoid the injury this easily can properly be considered.

As set out in section IV above, a denial of First Amendment rights, standing alone, is often an irreparable injury.  But that is not so when the issue is only a small amount of money.  The plaintiffs can put up an extra $37.50 each at this time—they have not asserted that they are indigent or that putting up this amount of money will cause a hardship—and thus avoid any reduction in the content or volume of their speech.  They can obtain a ruling on the claimed constitutional right to anonymity after the merits are fully and fairly litigated.  Requiring the plaintiffs

to put up the extra money will cause them no irreparable harm.

For the same reasons, and as set out in sections III and IV above, the balance of equities and public interest are factors that cut against a preliminary injunction on this issue.

## VI.  Contributions Received in the Last Five Days

Finally, the plaintiffs challenge the limitation on spending contributions received in the last five days before the election.  *See* § 106.08(4), Fla. Stat.  The limitation is timed to coincide with the requirement for disclosing contributions.  A political committee's last required disclosure is five days before the election.  The state's asserted justification for the limitation on spending funds received later is that it is necessary to prevent a committee or contributor from circumventing the requirement to disclose contributions.  Without the limitation, a contributor could wait until after the last required disclosure, and then pour money into the campaign, without anyone knowing until after the election, when the knowledge could not affect the election's outcome.  Or so the theory goes.

The state attempts to minimize the impact of the limitation, noting that an advocate can still spend funds in the five days before the election, so long as the funds were raised earlier, and can still spend funds raised in the five days before the election, just not on *that* election.  But the ability to raise and spend funds in the last five days before an election is not insignificant.  Indeed, at least before the advent

of early voting and the expansion of absentee voting, the last five days before the election were perhaps the most crucial in many election cycles.

The state's justification for the limitation does not survive exacting scrutiny in another respect as well.  The last *required* disclosure is five days before the election, but that does not prevent a political committee from filing another disclosure during the last five days.  If a committee receives a contribution during the weekend before the election and files a disclosure on Monday morning, there is no adequate justification for preventing the committee from spending the money on Monday afternoon, before Tuesday's election.  In the days of electronic filing and internet access to public records, any assertion that a five-day lag time is needed to provide meaningful public access has too little weight to justify a ban on core First Amendment speech.

So the plaintiffs are likely to prevail on the merits on this issue.  And if the effect of the challenged provision is to prevent the plaintiffs from raising and spending funds in the last five days before this election as they intend to do, the result will be the suppression of speech in violation of the First Amendment.  Here, unlike on the plaintiffs' other claims, there is no effective work-around that will allow the plaintiffs to speak as much and as effectively.  Nor will a last-minute change substantially disrupt the election, because it will remain true that a political committee can spend contributions only if (1) their disclosure at least five days

before the election will be mandatory or (2) they have in fact been disclosed before

they are spent.  On this issue, therefore, the plaintiffs have satisfied the four criteria

for issuance of a preliminary injunction.

## VII.  Security

The plaintiffs assert that because they are citizens bringing a constitutional

challenge to government action, they ought not be required to post security as a

condition of the preliminary injunction, as otherwise required by Federal Rule of

Civil Procedure 65(c).  At least two circuits have approved dispensing with security

for indigent plaintiffs who are otherwise entitled to preliminary injunctive relief.

*See Pharm. Soc'y, Inc. v. Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)

(waiving the bond requirement for indigent plaintiffs asserting claims under

comprehensive federal health and welfare statutes); *Temple Univ. v. White*, 941

F.2d 201, 219-20 (3d Cir. 1991) (upholding the waiver of the bond requirement in

an action to enforce compliance with the Medicaid Act).  The plaintiffs do not

assert they are indigent, but they do say they are unable to post substantial security.

The defendants have neither contested the claim nor asserted that if a preliminary

injunction is otherwise deemed proper, the plaintiffs should be required to post

security.  This order imposes no requirement for security, but the defendants may

move to amend the order if they assert that the limited preliminary injunction will

cause them to incur expenses for which the plaintiffs should be required to provide

security.

## VIII.  Conclusion

This case raises issues that cannot be finally resolved on the plaintiffs'
motion for a preliminary injunction.  At this early stage, the plaintiffs appear likely
to prevail on the merits on the claim that they have a First Amendment right to
spend contributions that are received and fully disclosed in the five days before an
election.  Based on the likelihood of success on the merits and the other factors that
govern a preliminary-injunction motion, the plaintiffs' motion should be granted
only on the challenge to the five-day provision, not in other respects.  Accordingly,

IT IS ORDERED:

1.  The plaintiffs' motion for a preliminary injunction, ECF No. 6, is
GRANTED IN PART and DENIED IN PART.

2.  The defendants must not enforce against the plaintiffs any provision of
Florida law preventing the plaintiffs from spending—in connection with the
November 2, 2010, election—a contribution received in the last five days before the
election, on the ground that the contribution was received in the last five days
before the election, but this injunction applies only if, before the contribution is
spent, the plaintiffs have fully disclosed the contribution in a filing properly made
with the Division of Elections.

3.  This injunction binds the defendants and their officers, agents, servants,

employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

4.  This injunction is effective immediately, without the posting of security, but an order will be entered requiring the posting of security if a defendant so moves.

5.  This injunction will remain in effect until the entry of a final judgment or until otherwise ordered.

SO ORDERED on October 26, 2010.

s/Robert L. Hinkle_____
United States District Judge