IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW NATHAN WORLEY et al.,

    Plaintiffs,

v.                                           CASE NO. 4:10cv423-RH/CAS

KENNETH W. DETZNER, in his
official capacity as Florida
Secretary of State, et al.,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case presents a challenge to Florida campaign-finance statutes as they apply to a ballot issue—a popular vote on a proposal to amend the state constitution. The statutes set no limit on the amount a person may spend or contribute to advocate the passage or defeat of a ballot issue. But the statutes require contributions and expenditures to be reported, impose bookkeeping requirements, require that advertisements disclose their source, and prohibit

spending—on a ballot issue—contributions received in the last five days before the vote. This order upholds all of these provisions but the last.

I

The plaintiffs are Andrew Nathan Worley, Pat Wayman, and John Scolaro. The defendants are the Florida Secretary of State and the members of the Florida Elections Commission, all in their official capacities.

The plaintiffs and Robin Stublen—who originally was a plaintiff but dropped out—joined together to oppose a ballot initiative, Proposed Amendment 4 on the November 2, 2010, general-election ballot. The initiative would have required amendments to a local government's comprehensive plan to be approved in a public referendum. The three plaintiffs and Mr. Stublen wished to contribute $150 each, for a total of $600, to purchase air time for a radio advertisement they wrote opposing Amendment 4. They proposed to run the advertisement 30 times; the air time cost $20 for a 30-second slot.

The four also wished, however, to accept contributions—including anonymous and cash contributions—and to use the funds to run the advertisement more often. They did not wish to identify themselves in the advertisement because they wished to use all of the purchased air time to convey the substance of the message and wished for the message to be evaluated based on its content, not based on its sponsors' identities.

The plaintiffs asserted, and the defendants seemed to concede, that even if the plaintiffs did no more than spend their initial $600, they would become a "political committee" under Florida law. *See* § 106.011(1)(a), Fla. Stat. (defining a "political committee" to include a combination of two or more individuals who accept contributions of—or spend—more than $500 in a year to expressly advocate the election or defeat of a candidate or the passage or defeat of a ballot issue).

The plaintiffs asserted, and the defendants seemed to concede, that this in turn would require the plaintiffs to comply with all the political-committee regulations. *See* § 106.021(1) (appoint a treasurer and establish a campaign depository); § 106.03(1)(a) (register with the Division of Elections); § 106.05 (deposit all funds within five business days of receipt); § 106.06(1) (keep detailed accounts current within two days); § 106.06(3) (maintain records for two years); § 106.07(4)(a) (file periodic reports of all contributions and expenditures); § 106.11 (disburse funds only by check); § 106.22(10) (submit to random audits by the Division of Elections).

The plaintiffs asserted, and the defendants seemed to concede, that Florida law prohibited the plaintiffs from accepting anonymous contributions of any size or cash contributions of more than $50. *See* § 106.09.

The plaintiffs asserted, and the defendants seemed to concede, that Florida law required the plaintiffs to include in any advertisement a statement identifying themselves or their committee. *See* § 106.143(1)(c)-(d).

Finally, the plaintiffs asserted, and the defendants seemed to concede, that Florida law prohibited the plaintiffs from paying for advertisements advocating the passage or defeat of a ballot issue with contributions received during the last five days before the vote. *See* § 106.08(4).

The plaintiffs filed this action challenging the requirement to disclose contributions, challenging the attendant ban on anonymous contributions and on cash contributions of more than $50, challenging the requirement to register as a political committee, challenging the requirement to include in a radio advertisement a statement of its source and thus banning anonymous advertisements, and challenging the ban on spending on a ballot issue contributions received in the last five days before the vote. The plaintiffs moved for a preliminary injunction. The motion was granted in one respect only: the defendants were enjoined from enforcing the ban on spending a contribution received in the last five days before an election if, prior to the expenditure, the contribution was reported.

The Amendment 4 election has passed; the proposal was defeated. The plaintiffs say, though, that they intend to support or oppose future ballot

amendments. The plaintiffs are politically active, and ballot issues in Florida are commonplace. The dispute between the plaintiffs and the defendants presents a live controversy.

The parties have filed cross-motions for summary judgment. They agree the case should be resolved on summary judgment. They disagree only on which side should win. This order grants summary judgment for the plaintiffs coextensive with the preliminary injunction and otherwise grants summary judgment for the defendants.

## II

The plaintiffs say they wish to accept contributions from others who agree with their position on a ballot issue. The plaintiffs wish to be able to "pass the hat" to accept anonymous contributions—including cash—at public gatherings. But Florida law requires public disclosure of all contributions, no matter how small. This prevents anonymous contributions.

The Supreme Court has repeatedly said that contributor-disclosure requirements are valid. *See Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 915-16 (2010) (collecting cases); *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 195-96 (2003) (contributions over $1,000); *Buckley v. Valeo*, 424 U.S. 1, 63-68 (1976) (contributions over $100). And the Supreme Court has said this not only in cases involving candidate elections but also in cases involving ballot issues

like the one involved here.  *See Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley, Cal.*, 454 U.S. 290, 299-300 (1981) ("[T]he integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions."); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 792 n.32 (1978) ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected.").  *See also Let's Help Fla. v. McCrary*, 621 F.2d 195, 200-01 (5th Cir. 1980) (stating in dictum that the same Florida disclosure requirement at issue here is constitutional).

The plaintiffs say none of these are square *holdings* applicable to ballot issues.  But when the Supreme Court has repeatedly said that requirements like these are constitutional, and the pre-*Bonner* Fifth Circuit has said these very requirements are constitutional, a district court in this circuit would properly reach a different result only on a much more persuasive showing than the plaintiffs have mustered here.

To be sure, the plaintiffs say the law has changed, and they cite *Citizens United* as confirmation.  *Citizens United* did overrule prior Supreme Court authorities, but not the authorities upholding disclosure requirements.  To the contrary, *Citizens United* upheld the disclosure requirements at issue there and

gave not the slightest hint that its prior decisions on this subject had lost their force. *See Citizens United*, 130 S. Ct. at 915-16. The plaintiffs' invitation to ignore the Supreme Court's repeated statements on the ground that more recent decisions have implicitly undercut them is unfounded on the merits and in any event brings to mind the Eleventh Circuit's disapproval of just such an approach:

> The problem with [the dissent's] approach is that the Supreme Court has repeatedly told us not to take it. The Court has instructed us: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989); *see also Tenet v. Doe*, 544 U.S. 1, 125 S. Ct. 1230, 1237, 161 L.Ed.2d 82 (2005) (quoting *Shearson/Am. Express, Inc.*, 490 U.S. at 484, 109 S. Ct. at 1921-22); *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 180, 110 S. Ct. 2323, 2332, 110 L.Ed.2d 148 (1990) (plurality op.) (same); *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."); *Hohn v. United States*, 524 U.S. 236, 252-53, 118 S. Ct. 1969, 1978, 141 L.Ed.2d 242 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

*United States v. Rodriguez*, 406 F.3d 1261, 1277-78 (11th Cir. 2005).

The plaintiffs also insist that even if a group may be required to disclose substantial contributions, there is no reason to require disclosure of small ones, with the attendant prohibition on anonymous contributions, no matter how small. It is true that many jurisdictions set a minimum level below which contributions

need not be disclosed.  But today a contributor and in turn the party who receives it can transfer information and thus make disclosures much more easily than ever before; doing so often will require only a few key strokes.  And in an era when thousands, indeed millions, of small contributions can be made online or through text messages, the disclosure requirement serves an additional purpose beyond just identifying the contributor.  Disclosing small contributions makes it much more difficult for a contributor to evade the reporting requirement by making multiple small contributions and makes it much more difficult for a party receiving contributions to claim incorrectly that they were so small that there was no obligation to report.  The Supreme Court has recognized that preventing such evasions is a legitimate goal that can support a requirement to disclose contributions as low as $10: "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the contribution limitations . . . ."  *Buckley v. Valeo*, 424 U.S. 1, 67-68.

      The challenged disclosure requirements are constitutional.

III

      The plaintiffs next challenge the requirement that they register as a "political committee" and comply with the regulatory burdens that attend that status.  They rely primarily on *Citizens United*.  There the Supreme Court struck down a federal

statute that prohibited a corporation or union from spending its treasury funds to advocate the election or defeat of a candidate. The Court said that allowing a corporation or union to speak through a political action committee did not save the statute, first because speech by a PAC was not speech by the corporation or union itself, and second because PACs are "burdensome alternatives; they are expensive to administer and subject to extensive regulations." 130 S. Ct. at 897.

The plaintiffs assert that a "political committee" under Florida law is not materially different from a PAC under the federal provisions at issue in *Citizens United*. Even if that were so, *Citizens United* would not resolve the question of whether Florida can regulate the plaintiffs as a political committee. *Citizens United* involved an outright ban on election-related speech by a single speaker. The only purported justification for the ban was that the speaker was a corporation. The Court rejected the proposition that, for this purpose, a corporation had no right to speak, and it held that the ability to speak through a PAC did not save the otherwise-unconstitutional ban on direct speaking by the corporation.

Here, in contrast, Florida law does not prohibit a plaintiff from speaking. Each plaintiff is free to speak as much as the plaintiff chooses and need not register as a political committee in order to do so. It is only the plaintiffs' decision to act jointly—and to pool their funds—that triggers the application of the Florida

political-committee provisions. The law has long recognized, in many contexts including this one, that there is a difference between individual and joint action.

Still, political-committee regulation imposes a burden and is subject to exacting scrutiny. At some point a burden on the exercise of First Amendment rights becomes more than the Amendment will allow. But the burden here is not great.

Indeed, the most burdensome regulations require little if anything more than a prudent person or group would do in these circumstances anyway. Thus a prudent group that chose to accept contributions from others for a specific purpose would put someone in charge of the money, would not intermingle the contributions with personal funds and—to avoid intermingling—would set up a separate bank account, would promptly deposit contributions into the account, would keep good records, and—to promote good recordkeeping—would disburse funds by check. And so Florida law requires a political committee to appoint a treasurer and establish a campaign depository, Florida Statutes § 106.021(1); deposit all funds within five days of receipt, *id*. § 106.05; keep detailed accounts current within two days and maintain the records for two years, *id*. § 106.06(1) & (3); and disburse funds only by check, *id*. § 106.11. These requirements do not impose an unconstitutional burden.

The other political-committee requirements impose only a modest burden. The political committee must register with the Division of Elections, *id*. § 106.03(1)(a), a process that requires only filling out a short form and sending it in. The political committee must file periodic reports of contributions and expenditures, § 106.07(4)(a)—that is, must make the disclosures that, as set out above, the Supreme Court has repeatedly said may constitutionally be required. And the political committee must submit to random audits, *id*. § 106.22(10), a process the plaintiffs might never actually undergo and that, if they operate as modest an operation as they say they will, is likely to impose very little burden at all. All of these provisions are well tailored to the legitimate goal of requiring disclosures and ensuring that they are made.

The plaintiffs have not shown that any of the political-committee regulations will impose on them an unconstitutional burden.

IV

The plaintiffs next challenge the provision requiring their proposed radio advertisements to include a statement of their identity—sometimes referred to as a disclaimer. The plaintiffs assert a right to speak anonymously. They wish to devote their limited air time to their message, not to identifying themselves, and they wish for the message to be evaluated on its content, not based on the plaintiffs' identities.

The Supreme Court has recognized an *individual's* right to speak anonymously *in a handbill* on an issue that will be on a public ballot. In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), the Court struck down a fine imposed on a woman who, acting independently of anyone else, circulated anonymous handbills opposing a ballot measure, thus violating a state ban on anonymous campaign literature. The Court said that the two interests invoked by the state were not sufficient to save the fine. First, the state's interest in providing the electorate accurate information on the source of an assertion—thus allowing recipients to better evaluate the assertion—was no different than the state's interest in providing the electorate other relevant information that a speaker was free to include or leave out of the speaker's materials. *Id*. at 348-49. Second, the state's interest in deterring false or defamatory statements could be served in other ways, without banning anonymous speech that was neither false nor defamatory. *Id*. at 349-51.

*McIntyre* differs from this case in two respects. First, *McIntyre* involved handbills. This case involves radio advertisements. The *McIntyre* opinion noted the distinction, indicating that the statute at issue there banned not only anonymous handbills but also anonymous radio and television advertisements, and continuing:

> No question concerning [the radio and television] provision is raised in this case. Our opinion, therefore, discusses only written communications and, particularly, leaflets of the kind Mrs. McIntyre distributed. *Cf. Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637-

638 (1994) (discussing application of First Amendment principles to regulation of television and radio).

*Id*. at 338 n.3.

Second, *McIntyre* involved an individual who acted alone. The plaintiffs in this case have explicitly chosen to speak as a group. Indeed, the decision to do so is what gives them standing to bring the bulk of their challenges to the Florida statutes. The plaintiffs' assertion apparently is that *McIntyre* recognized a right to anonymous speech and that it applies not just to an individual but to a group, no matter how large.

The Supreme Court has never said that an individual has a First Amendment right to run an anonymous radio advertisement addressing a ballot issue. But even if a person had such a right, that would not help the plaintiffs. Under repeated decisions of the Supreme Court, an individual has no right to receive an anonymous contribution to fund a radio advertisement addressing a ballot issue, nor a right to make an anonymous contribution to fund someone else's radio advertisement. *See, e.g.*, *Citizens Against Rent Control/ Coal. for Fair Hous. v. City of Berkeley, Cal.*, 454 U.S. 290, 299-300 (1981); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 792 n.32 (1978); *see also Citizens United*, 130 S. Ct. at 913-14 (upholding a disclosure requirement for advertisements relating to a candidate election).

The Supreme Court has not expanded *McIntyre* beyond its context, despite repeated opportunities to do so. Instead, the Supreme Court has continued to uphold disclosure and disclaimer requirements that are inconsistent with any right of a group to run anonymous radio or television advertisements. As one of the justices who joined the *McIntyre* opinion noted, "In for a calf is not always in for a cow." 514 U.S. at 358 (Ginsburg, J., concurring).

There is no right to make or receive anonymous contributions or to run anonymous advertisements spending them. The plaintiffs' challenge to the disclaimer requirement is unfounded.

V

Finally, the plaintiffs challenge the limitation on spending contributions received in the last five days before the election. *See* § 106.08(4), Fla. Stat. The limitation is timed to coincide with the requirement for disclosing contributions. A political committee's last required disclosure is five days before the election. The state's asserted justification for the limitation on spending funds received later is that it is necessary to prevent a committee or contributor from circumventing the requirement to disclose contributions. Without the limitation, a contributor could wait until after the last required disclosure, and then pour money into the campaign, without anyone knowing until after the election, when the knowledge could not affect the election's outcome. Or so the theory goes.

The state attempts to minimize the impact of the limitation, noting that an advocate can still spend funds in the five days before the election, so long as the funds were raised earlier, and can still spend funds raised in the five days before the election, just not on that election. But the ability to raise and spend funds in the last five days before an election is not insignificant. Indeed, at least before the advent of early voting and the expansion of absentee voting, the last five days before the election were perhaps the most crucial in many election cycles.

The state's justification for the limitation does not survive exacting scrutiny in another respect as well. The last required disclosure is five days before the election, but that does not prevent a political committee from filing another disclosure during the last five days. If a committee receives a contribution during the weekend before the election and files a disclosure on Monday morning, there is no adequate justification for preventing the committee from spending the money on Monday afternoon, before Tuesday's election. In the days of electronic filing and internet access to public records, any assertion that a five-day lag time is needed to provide meaningful public access has too little weight to justify a ban on core First Amendment speech.

The ban on spending fully-disclosed contributions received in the five days before an election is unconstitutional.

VI

For these reasons,

IT IS ORDERED:

1. The summary-judgment motions, ECF Nos. 39 and 40, are GRANTED IN PART and DENIED IN PART.

2. Summary judgment is granted for the plaintiffs on their challenge to the prohibition on spending in the five days before an election contributions that have been fully disclosed.  The defendants must not enforce against the plaintiffs any provision of Florida law preventing the plaintiffs from spending—in connection with an election—a contribution received in the last five days before the election, on the ground that the contribution was received in the last five days before the election, but this injunction applies only if, before the contribution is spent, the plaintiffs have fully disclosed the contribution in a filing properly made with the Division of Elections.  This injunction binds the defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.  The court reserves jurisdiction to enforce the

injunction.

      3.      Summary judgment is granted for the defendants on all other claims.

      4.      The clerk must enter judgment accordingly.

      5.      The clerk must close the file.

SO ORDERED on July 2, 2012.

                                                <u>s/Robert L. Hinkle</u>
                                                United States District Judge